Botsford, J.
Introduction
The plaintiff Barbara Thornton has brought this action for legal malpractice against Kaye, Fialkow, Richmond & Rothstein, a partnership of attorneys, the individual partners of Kaye Fialkow (the partnership and the attorneys are referred to collectively as Kaye Fialkow), another law firm, and its attorneys. Thornton’s claim concerns a lawsuit brought against Thornton and others by third parties, in which Thornton was represented successively by the defendant attorneys; the underlying suit ended in a default judgment against Thornton in the amount of approximately $15 million. Pursuant to Mass.R.Civ.P. 12(b)(6) and (7), Kaye Fialkow has moved to dismiss the claims against them in this action on the grounds that (1) Thornton has assigned her interest in this malpractice action to the third parties who prevailed against her in the underlying lawsuit (Adoks plaintiffs), and as assignees they are the real parties in interest; (2) a cause of action for legal malpractice is not assignable and therefore cannot survive a motion to dismiss; and (3) Thornton herself has suffered no injury.[2] For the reasons discussed below, the motion to dismiss is DENIED.
Facts
Thornton’s complaint in this case alleges the following facts, all of which I accept as true for purposes of the motion to dismiss. In October 1992, Adoks A. S. Inc., a Delaware Corporation, Richard Libbey, and Richard Brown (Adoks plaintiffs) filed an action against Thornton and a number of other parties, Adoks A. S., Inc. et al. v. Van Gazda, Inc. et al. (Suffolk Superior Court, C. A. No. 92-6253-F) (Adoks litigation).[3] The complaint in the Adoks litigation asserted violations of the federal RICO statute, 18 U.S.C. §1964 et seq., the Massachusetts Consumer Protection Act, G.L.c. 93A, and various common law torts. Thornton was claimed to have been a former officer of Adoks; and in that capacity she was alleged to have participated in a fraudulent scheme to transfer Adoks’ assets without consideration and to prevent Adoks from taking advantage of corporate opportunities which should have been offered to the corporation. (Thornton Complaint, ¶¶9, 10.)
Thornton was initially represented in the Adoks litigation by Leslie Bloomenthal, Esquire, one of the *420 defendants in the instant action. On December 27, 1992 and January 14, 1993, the Adoks plaintiffs deposed Thornton but did not complete the deposition. On December 9, 1993, the Adoks plaintiffs renoticed Thornton’s deposition which was ultimately scheduled for 10 a.m. on January 18, 1994; Thornton and Bloomenthal showed up late.[4] (Complaint, ¶46.) Consequently, the Adok’s plaintiffs’ counsel filed a motion to compel Thornton’s attendance at her deposition, and the motion was allowed. The court order reads in part: “Failure of Defendant ... to appear for her continued deposition on February 28, 1994 (as scheduled per Order of this Court), and on each consecutive day or days thereafter until her deposition is completed, shall constitute a default thereunder.” (Complaint, ¶47.) This order was entered on the same day that Bloomenthal was given leave to withdraw as Thornton’s counsel, February 14, 1994.
Thornton retained Kaye Fialkow to represent her in the Adoks litigation on February 25, 1994, and paid Kaye Fialkow $5,000 as a retainer. (Complaint, ¶49.) On March 2, 1994, Thomas Looney, an associate at Kaye Fialkow, advised Thornton to leave her deposition before it was completed because he had to appear in Middlesex Superior Court. (Complaint, ¶55.) The Adoks plaintiffs moved for default immediately following the termination of the deposition pursuant to the February 14, 1994 court order. On March 23, 1994 the default motion was argued, and on April 1, 1994 a judge of this court defaulted Thornton for failing to comply with the February 14, 1994 order. (Complaint, ¶62.)
Following entry of the default, a hearing to assess damages was held on May 12, 1994. Thornton alleges that Kaye Fialkow was negligent in conducting discovery and missed various filing dates in connection with the assessment hearing, causing her prejudice; and that because of their negligence, they were unprepared for the damages hearing and unable either to cross-examine witnesses or present an effective defense of Thornton. (Complaint, 167.)
During the initial settlement hearings, the Adoks plaintiffs suggested a settlement figure of $50,000. Sheehy advised against paying that sum, indicating that Thornton would likely pay less after the hearing. (Complaint, ¶68.) Subsequently, on July 12, 1994 a judge of this court found that Thornton was liable for damages of $5,260,790 to the plaintiffs and trebled the figure under RICO and G.L.c. 93A to reach a judgmentin excess of $15,782,370. On July 22, 1994, Kaye Fialkow filed a notice of appeal on behalf of Thornton. While the appeal was pending, however, Thornton settled with the Adoks plaintiffs. (Complaint, ¶¶72, 73.)
Thornton and the Adoks plaintiffs entered into a written settlement agreement (initial agreement) in April of 1995. Under the initial agreement: Thornton agreed to withdraw with prejudice her notice of appeal; the Adoks plaintiffs reduced the final judgment to $13,000,000; the Adoks plaintiffs agreed never to enforce the final judgment; and Thornton assigned to the Adoks plaintiffs the right to prosecute, and collect the proceeds of, her malpractice claims against Bloomenthal and Kaye Fialkow. On December 6,1996, Thornton and the Adoks plaintiffs entered into a “Substitute Settlement Agreement Between Barbara Thornton and Adoks, A. S., Richard Libbey, and Robert Brown” (substitute agreement), which modifies their initial agreement, inter alia, to effect a partial assignment instead of an entire assignment of her right to prosecute her malpractice claim.[5]
Under the substitute agreement, Thornton does not expressly assign her malpractice claims against Bloomenthal and Kaye Fialkow. Rather she retains her right to select counsel and to settle her malpractice claims. The substitute agreement stipulates that through her counsel, Thornton must notify the Adoks plaintiffs of any settlement offers, of her intention to settle, of the terms and dates of any payment of sums under a judgment or settlement, and of the receipt of any sums under a judgment or settlement. Furthermore, any proceeds she receives through either the settlement or judgment of her malpractice claims are to be given to her attorneys and disbursed under the terms of a “Confidential Settlement Memorandum," a separate document executed by Thornton and the Adoks plaintiffs. Thornton is obligated to prosecute this malpractice action under the substitute agreement and she must give 85% of any judgment and a currently undisclosed portion of any settlement over to the Adoks plaintiffs.[6]
Discussion
“In ruling on a motion to dismiss, the allegations of the complaint and annexed exhibits as well as such inferences that may be drawn therefrom in the plaintiffs favor are to be taken as true.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 87 (1979). Further, a motion to dismiss a complaint should not be allowed unless it appears certain that the complaining party is not entitled to relief under any state of facts which could be proved in support of its claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994); Rae v. Air-Speed, Inc., 386 Mass. 187, 191 (1982). Kaye Fialkow’s argument is twofold: (1) because the Adoks plaintiffs are the assignees of the malpractice claim, they are the real party in interest under Mass.R.Civ.P. 17 and must be added as plaintiffs to the action; and (2) once the Adoks plaintiffs are added, this action must be dismissed because in Massachusetts, an assignment of a legal malpractice cause of action is prohibited on public policy grounds.
1. There is some force to the argument that the Adoks plaintiffs should be joined under Rule 17. Rule 17(a) provides that “every action shall be prosecuted in the name of the real party in interest." “The effect *421 of this rule is to avoid a multiplicity of suits by similarly situated plaintiffs involving the same or similar causes of action. ” Mass. Ass'n. of Independent Ins. Agents and Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 297 (1977) (MAIIAB was a real party in interest; allowing associational standing avoids multiplicity of actions and insures the interests of the members). The substitute agreement in substance at least calls for a partial assignment of the fruits of this action and may be read to give the Adoks plaintiffs a meaningful role in its prosecution. Where there has been a partial assignment, the assignee and the assignor (who still retains part of the substantive right) should join as plaintiffs, each suing in his own name. “The rule with respect to partial assignments is that . . . the partial assignor of a chose in action should be joined with the assignee.” Boris v. Moore, 152 F.Sup. 595, 599 (E.D. Wis. 1957) (in a suit brought by the assignee, court joined the assignor under Fed.R.Civ.P. 17(a)). See Airlines Reporting Corp. v. S. and N. Travel, Inc., 857 F.Sup. 1043, 1047 (E.D.N.Y. 1994) (an assignee for purposes of collection holds legal title to the debt and is a real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action); J. W. Smith & H. B. Zobel, Rules of Practice §17.5 (1975).
By j oining the Adoks plaintiffs as party plaintiffs in this case, their interests as well as the interests of the defendants are served. Although the confidential agreement conferred more, the substitute agreement still gives the Adoks plaintiffs a substantial stake in this case, and including them as plaintiffs will recognize this fact. Pursuant to Mass.R.Civ.P. 21, the Adoks plaintiffs are to be added as plaintiffs to this case.
2. Kaye Fialkow argues that the assignability of a legal malpractice claim is void on grounds of public policy. It is true that a majority of other jurisdictions have barred assignability of legal malpractice claims. “The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty and who have never had any prior connection with the assignor or his rights.” Goodley v. Wank and Wank, Inc., 62 Cal.App. 3d 389, 397 (1976). The Massachusetts appellate courts, however, have not yet addressed the assign-ability of legal malpractice claims. Leone v. Security Ins. Co. of Hartford, 14 Mass.App.Ct. 1026, 1027 (1982) (court did not reach the question of the validity of an assignment to the plaintiff of “rights" against the various attorneys who, assignor claims, negligently represented him).[7]
Courts which have prohibited assignments of legal malpractice claims have been particularly concerned where, as here, the assignee was the plaintiff in the underlying lawsuit which gave rise to the legal malpractice claim because of the risk of collusion. In Coffey v. Jefferson County Board of Education, 756 S.W.2d. 155, 155-56 (Ky. 1988), for example, the assignor was the defendant in the underlying lawsuit; he confessed judgment and, instead of paying the $1,000,000, assigned his claims of malpractice against his attorney to the underlying lawsuit’s plaintiff. Granting the defendant’s motion for summary judgment, the court called the assignment a “contrived and elaborate scheme,” stating, “it appears to us that this transaction is so collusive that same should be held against public policy.” Id. at 156. See Wagener v. McDonald, 509 N.W.2d 188, 191 (Minn. Ct. App. 1993) (legal malpractice claims held unassignable due in part to risk of collusion); Zuniga v. Groce, Locke & Hebdon, 878 S.W.2d. 313, 316 (Text Ct. App. 1994) (assignment held to be a transparent device to replace a judgment proof, uninsured defendant with a solvent defendant).
The central factor distinguishing these cases from the case at bar, however, is that on the abbreviated record before me, this case appears to involve a partial assignment, rather than an entire assignment, of a legal malpractice claim. If this is so, many of the policy considerations which other courts have identified as militating against assignment do not come into play so sharply. Clearly, the substitute agreement on its face raises a risk of collusion, a risk made stronger when the original agreement and substitute agreement are considered together. Nevertheless, the risk of collusion may not necessarily lead to dismissal as the appropriate remedy. The Supreme Judicial Court has held that where a satisfactory basis for the issue of collusion exists, the defendant can argue it to the factfinder. Campione v. Wilson, 422 Mass. 185, 193 (1996).[8]
3. Kaye Fialkow further contends that this action must be dismissed because under the settlement agreement the Adoks plaintiffs will not enforce their judgment against Thornton; therefore, they contend, Thornton has suffered no damages. The court in Campione rejected the “somewhat metaphysical contention” that the legal basis for the claim against the insurer disappeared when the insured became insulated from liability due to a release or a covenant not to execute. Campione v. Wilson, supra at 191-92, quoting Gray v. Grain Dealers Mut. Ins. Co., 871 F.2d. 1128, 1132 (D.C.Cir. 1989). In any event, Massachusetts courts have held that the gist of a legal malpractice claim is a breach of implied contract and a breach of contract carries with it at least nominal damages. Fall River Savings Bank v. Callahan, 18 Mass.App.Ct. 76, 81-82 (1986). As such, dismissal because of an alleged absence of damages is inappropriate.
Kaye Fialkow requests that if their motion to dismiss is denied, I report the question of assignability to *422 the Appeals Court for an appellate ruling before the trial. I decline to do so at this time. As previously discussed, the present record suggests the assignment in question is only a partial assignment, not an entire assignment: the substitute agreement does not deprive Thornton of her rights to litigate her malpractice claim but only the right to a percentage of the proceeds. Discoveiy in this case may expand the record on the nature of the assignment, and if appropriate, the question of reporting the case may be raised again.
ORDER
For the foregoing reasons, it is ORDERED that pursuant to Mass.R.Civ.P. 21, Adoks A. S., Inc., Richard Libbey, and Richard Brown shall be joined as plaintiffs in this action; an amended complaint which names them as plaintiffs along with Thornton is to be filed within 21 days. It is further ORDERED that the defendant Kaye Fialkow’s motion to dismiss be DENIED.

 The other defendants, Leslie Bloomenthal, Peter McNamara, and their firm, Bloomenthal & McNamara, P.C., have not so moved.

 The Adoks litigation included as defendants six other individuals and a corporation all affiliated with Czechoslovakia (Czechoslovakia defendants); they are not parties in the instant action.

 Thornton states in her complaint that Bloomenthal misrepresented the time of the deposition.

 Kaye Fialkow argues that the substitute agreement should be disregarded because it is post hoc paperwork and cannot revive a cause of action which has expired. The argument is without merit. The substitute agreement was entered into before the three year statute of limitations on Thornton’s malpractice claims against Kaye Fialkow had run. Kaye Fialkow further argues that the substitute agreement lacks consideration. In Massachusetts, the effective substitution of an executory contract requires no consideration beyond mutual releases by the parties from the obligations of the prior contract. Baldwin's Steel Erection Co., Inc. v. Champy Construction Co., Inc., 353 Mass. 711, 715 (1968). See Zlotnick v. McNamara, 301 Mass. 224, 226 (1938); Rollins v. Marsh, 128 Mass. 116, 120 (1880).

 By court order, Kaye, Fialkow have obtained a redacted copy of the Confidential Settlement Memorandum. Kaye, Fialkow argue that they need access to the unredacted copy at this time, for purposes of advancing their motion to dismiss. I disagree that the requested access would have any impact on the resolution of this motion, but Kaye, Fialkow is certainly entitled to press for access to the full copy as part of discovery.

 The First Circuit has found that through the assignment of a certificate of title a plaintiff/assignee cannot proceed against the assignor’s attorney for negligent certification. One National Bank v. Antonellis, 80 F.3d. 606 (1st Cir. 1996). The court did not expressly reach the issue of whether a legal malpractice claim is assignable because the plaintiff had failed to raise that issue below. Id. at 612-13 n. 6. The court did, however, point out that Massachusetts case law emphasizes the fiduciary nature of the attorney-client relationship and the obligation of confidentialiiy imposed on an attorney. The court concluded: “In the absence of further guidance from the Massachusetts courts, we refuse to allow a third party, of whom the attorney does not know, to assume the rights of a client through assignment. We therefore find that One National did not acquire the right to proceed against Antonellis through the assignment of the certificate of title.” Id. at 614.

 In the circumstances, it is at best premature to rule on Kaye Fialkow’s contention that assignment of Thornton’s legal malpractice claim is void as against public policy. Discovery may lead to information suggesting that the substitute agreement effects more of an assignment than currently appears to be the case, thereby placing Kaye Fialkow’s argument in sharper focus. But we Eire not there yet.