Sabra, J.
This appeal stems from a third-party complaint by the third-party plaintiff-appellee and cross-appellant, Mary Ellen Riley (hereinafter “Riley”), against Commercial Insurance Agency, Inc. (hereinafter “Commercial”), the third-party defendant-appellant and cross-appellee, through which Riley recovered damages and attorney’s fees for Commercial’s breach of contract to procure certain insurance coverage, negligent misrepresentation, and violation of the Consumer Protection Statute, G.L.c. 93A, Commercial appeals from that judgment. Riley also appeals from the denial of the trial judge to amend the judgment by ordering double damages pursuant to G.L.c. 93Á. For the reasons which follow, the trial judge committed no error. The respective appeals are dismissed and the judgments shall stand.
The original lawsuit was filed against Riley by Pope Housing, Inc. (hereinafter “Pope”) which had provided a trailer to Riley for temporary housing after a fire damaged the property where she lived. Riley believed that payment for such temporary housing was covered under her insurance based upon her dealings with her insurance agent at Commercial. Commercial did make a $1500 payment to Pope but refused to pay the remaining balance. As a result of Commercial’s refusal to pay, Pope, who had entered into a signed contract with Riley, sought to recover the amount owed from Riley for the trailer rental. Riley then filed a third-party complaint against Commercial alleging a breach of the insurance contract, intentional misrepresentation, and a c. 93A violation based upon the lack of insurance coverage for business interruption loss and the temporary housing which Riley claimed was contracted for through Commercial. Commercial filed a counterclaim against Riley in the third-party action seeking to recover the $1500 paid to Pope on her behalf. Riley and Pope entered into an agreement for judgment as between those two parties and the third-party claim and counterclaim proceeded to trial.
Ultimately, judgment entered on behalf of Riley against Commercial for unfair and deceptive insurance settlement practices, breach of contract and negligent misrepresentation. Judgment was entered in favor of Commercial on the count alleging intentional misrepresentation and breach of warranty. Subsequent amendments to the original judgment entered in Riley’s favor added attorney’s fees and the sum which Riley was obligated to pay to Pope pursuant to the agreement for judgment. (There were also amendments to the judgment which, among other things, eliminated Riley’s husband, Anthony Femmino, as a third-party *244 plaintiff, and deleted Betsy Pridham, Commercial’s president, individually, from the judgment, none of which are pertinent to the issues raised on appeal.)
Turning first to Commercial’s claim that the evidence was insufficient to support a finding of liability against Commercial on a breach of contract theory, we note that a trial judge’s findings of fact will not ordinarily be disturbed unless “clearly erroneous.” Dicalogero v. Hingham Mutual Fire Ins. Co., 1998 Mass. App. Div. 67-68. In this case, the trial judge conducted a trial over four days, received into evidence 57 exhibits, and ruled upon a variety of motions during and after the trial. A thorough understanding of the nature and facts of the case are evidenced in the “Findings of Fact, Rulings of Law, and Judgment” entered by the court, and subsequently amended.
Specifically, the trial judge found the following pertinent facts. In 1990, Riley operated a bed and breakfast business at 2218 Massachusetts Avenue in Cambridge and resided in a three story apartment building located at 15 Day Street which was also used to house guests of the bed and breakfast as well as employees of that business. Betsy Pridham (hereinafter “Pridham”) was at that time a vice president of Commercial, which was an authorized agent for the Vermont Mutual Insurance Company. Pridham became president of Commercial in 1991 and was, at all times pertinent to this action, a licensed agent with authority to bind both Commercial and Vermont Mutual Insurance Company. Pridham actively solicited insurance business from Riley promoting her agency as one which could offer “the most competitive and comprehensive coverage available.” [Exhibit 29] She represented that her agency had developed a “strong base of commercial accounts of which the hospitality business dominates.” [Exhibit 29]
In response, Riley sent Pridham information on the existing coverage for 2218 Mass. Ave. for the purpose of obtaining an insurance quotation on that property. The trial judge found that Riley requested insurance coverage for loss of business income or loss of rents coverage. This was based upon Riley’s own testimony which the judge apparently found credible. It was also substantiated by a handwritten notation at the bottom of a special multi-peril policy Pridham prepared when she quoted the premium for Riley. At a meeting between Riley and Pridham, the subject of insurance coverage for the 15 Day Street property was also discussed. The court found that Riley requested similar coverage for loss of business income on that property and showed Pridham a quote from her existing insurance agency which included loss of income insurance on 2218 Massachusetts Avenue as a basis for comparison.
After a series of facsimile transmissions and telephone calls between Pridham and Riley, Pridham issued an insurance binder for 15 Day Street and for 2218 Massachusetts Avenue. During this period of time, Pridham asked Riley to provide a “limit” for 15 Day Street “if business interruption coverage is to be added.” [Exhibit 25] Riley provided the requested figure to Pridham and was thereafter sent a copy of the insurance policy for the properties. The “Declarations” page of the policy for 15 Day Street contained a “Gross Sales $125,000” figure which Riley understood to indicate the inclusion of business loss coverage. Riley also testified, and the court implicitly found, that she had requested Pridham to obtain the business interruption coverage as well as all the coverages for both locations which she had in her previous insurance policies including alternative living coverage. In fact, the insurance policies which Pridham arranged for Riley on the Day Street property did not contain loss of business coverage or alternative living coverage.
On February 16, 1991, a fire took place at 15 Day Street. Riley subsequently learned that Pridham had not included loss of business income coverage as she had been led to believe. Further, arrangements had been made with Pope to provide a mobile home trailer at the site of 15 Day Street while the reconstruction was taking place. Pope contacted Pridham to verity insurance coverage for this pur *245 pose and was informed by Pridham that it was covered. Commercial also made a $1500 payment to Pope for the trailer rental. The court found that Pope relied on these assurances and delivered the trailer on February 21,1991. The court further found that Riley signed a “Rental Agreement for Mobile Home Rental” with Pope in reliance upon Commercial having authorized the trailer rental.
Commercial claims that the essential elements of a contract were not proven by Riley requiring reversal of the court’s judgment on this basis. The appellant contends that there was no evidence presented of the precise “limits” and duration of the business interruption coverage by Riley which, it claims, is essential for the formation of an insurance contract. See Heaphy v. Kimball, 293 Mass. 414, 418 (1936). In this case, however, Commercial’s argument is without merit. It is clear from the evidence introduced at trial and from the court’s findings that an oral contract existed between Riley and Pridham, as agent for Commercial, for Pridham to procure and Riley to purchase insurance coverage for both properties which included all the insurance under their previous insurance policies plus business loss coverage and alternative housing coverage. Campione v. Wilson, 422 Mass. 185, 196 (1996).
Pridham specifically asked for and received a copy of Riley’s prior policy when she was soliciting Riley’s insurance business. Based upon the parties’ dealings with one another and Pridham’s claimed expertise, Riley was entitled to rely on Pridham’s assurances that everything would be taken care of as expected. The uncontroverted evidence was that Riley called Pridham with a “limit” figure in response to Pridham’s request. With respect to the amount, the evidence showed that the “gross sales” figure of $125,000 stated in the insurance policy declaration page was accepted by Riley as the business loss coverage limit from which the trial judge could infer was the amount Riley had given to Pridham. In addition, Exhibit 35, which was a letter from Riley’s husband to Commercial, indicates an income figure for 15 Day Street from the year prior to the fire of “at least $116,677.00,” which approximates the amount stated on the declaration page of the policy. From this, as well as the fact that there was business interruption coverage on Riley’s other property at 2218 Massachusetts Avenue, the court had a sufficient basis for finding that the terms of a contract to procure such coverage was established.
With respect to Commercial’s contention that there was no proof of causation and damage as a result of either Commercial’s alleged breach of contract or negligence, this argument is similarly without merit. The court had an ample basis to conclude that Riley would have received the loss of business income coverage and alternative living arrangements coverage but for the acts or omissions of Commercial through its agent, Pridham. Riley had such coverage before and wanted it again on both properties. Secondly, Riley specifically requested such coverage and received a policy with an entry on it that reasonably led her to believe that it was included in the policy. There is no dispute that the fire damage to 15 Day Street interrupted the operation of the bed and breakfast there and that the mobile home trailer was obtained as a temporary housing arrangement for Riley while the property was reconstructed. An expert economist testified as to business loss and Pope’s bill for the trailer proved that cost. As a result, the judge was warranted in finding that the “negligence of the defendants resulted in substantial damage to the plaintiff.” Contrast Rayden Engineering Corp. v. Church, 337 Mass. 652, 662 (1958) (plaintiff failed to prove damages due to negligence of defendant insurance broker). The court’s findings on this point are reinforced by the fact that the policy covering Riley’s other property on Massachusetts Ave. did have the requested coverage, thus making it reasonable for the court to conclude that, if properly handled by Pridham, Riley would have received the same coverage on 15 Day Street.
The court was also warranted in finding that Riley had requested but did not *246 receive alternative housing coverage due to the oversight of Pridham as the agent of Commercial. This type of coverage would have been part of the tenant-homeowner’s insurance policy. The testimony at trial established to the satisfaction of the trial judge that there were specific discussions of the 15 Day Street property being a mixed residential and commercial property, since Riley both lived there and used it as part of her bed and breakfast operation. In fact, Pridham suggested policy changes to Riley’s existing insurance coverage because of the nature of this property. Coupled with the evidence that after the fire, Pridham acknowledged to Pope that she had made a mistake and told both Pope and Riley that she “would take care of it” (referring to the trailer rental), the judge could reasonably find that such coverage should have been included in Riley’s policy and that it would have covered the trailer rental under the circumstances.
The appellant next contends that Riley’s failure to object to the policy issued by Commercial bars her recovery on a claim that the policy received did not include the terms requested. In the case of Campione v. Wilson, 422 Mass. 185 (1996), the Supreme Judicial Court held that an insured is entitled to rely on his broker as his agent even though the insured cannot “abandon all responsibility for ascertaining the terms of the coverage his broker obtained.” Id. at 196. “The existence of estop-pel ... depends on all the circumstances of the transaction, such as the nature of the relationship between the broker and the insured, the reasonableness of the parties’ conduct, and the insured’s sophistication and experience.” Id. The court was warranted in finding that Pridham held herself out to be an experienced and professional insurance agent, someone on whom Riley could rely. Riley already had insurance coverage through another agency and showed her existing coverage to Pridham for the express purpose of trying to obtain identical coverage plus business interruption insurance for both 2218 Massachusetts Avenue and 15 Day Street at a reasonable premium price. Pridham aggressively pursued Riley’s business and gave assurances throughout their dealings that everything would be taken care of. Because an insurance broker is the agent of the insured in negotiating for a policy, “a broker owes a greater duty to an insured than does an insurance company. When an insured makes an agreement with a broker calling for the purchase of particular coverage, the insured may reasonably rely on the broker’s superior expertise and may assume that the broker has performed his duty.” Id. at 195. Thus, Riley’s failure to object, under these circumstances, does not serve to bar recovery.
Commercial next contends that the trial judge erred in finding them liable pursuant to G.Lc. 93A. Specifically, the court found that the conduct of both Pridham and Commercial amounted to “unfair practices” within the meaning of G.L.c. 93A, Sections 2 and 9. An act is “deceptive” under 93A if “it could reasonably be found to have caused the person to act differently from the way [she] would have acted.” Tagliente v. Himmer, 949 F.2d 1, 7 (1st Cir. 1991). In addition, misrepresentations made to induce the execution of a contract are “unfair and deceptive” acts under 93A. Bond Leather Co., Inc. v. O.T. Shoe Mfg. Co., Inc., 764 F.2d 928 (1st Cir. 1985). The judge found that Pridham and Commercial had “committed acts within these definitions in convincing Riley to use Commercial for all her insurance needs to the exclusion of other insurance companies, in representing that all customary and requested coverages would be placed, and in causing her reasonably to believe that absent coverage was, in fact, present.” [Appendix, Vol. 1., p. 0085].
The thrust of Commercial’s assertion in this regard appears to be that because Pridham did not affirmatively misrepresent the contents of the insurance policy which issued to Riley, but merely sent the policy to Riley, that there was no misrepresentation which could form the basis of a 93A violation. The appellant, however, ignores the representations which were made by Pridham to Riley from the initial solicitation through the transmittal of the insurance binder in which Pridham in *247 effect promised to obtain specifically requested coverage for both of Riley’s properties. She failed to obtain all of such coverage even though she promoted herself as a broker with special expertise. In light of her misrepresentations made before the issuance of the policy as well as her statements and actions after the omissions were discovered after the fire, the court was justified in finding Commercial liable for “unfair and deceptive acts and practices.”
Commercial further contends that the trial judge erred in finding a violation of G.L.c. 93A, Section 9, asserting that this particular transaction was in a business context rather than a consumer context. The argument continues that because the 15 Day Street property was income generating and the omitted insurance coverage pertained to lost business revenues, a violation, if one existed, would be subject to section 11, rather than section 9, of c. 93A. Moreover, a violation of the unfair claim settlement practices statute, G.L.c. 176D, cannot form the basis of a section 11 claim under c. 93A. DiVenuti v. Reardon, 37 Mass. App. Ct. 73 (1994).
Although Commercial is correct in its assertion that the appropriate test for determining whether a Chapter 93A claim falls under Section 9 or Section 11 is by examining the context in which the transaction takes place, it is evident that in this case, with respect to the placement of alternative living coverage at 15 Day Street, Riley should be viewed as a consumer of homeowner insurance rather than a business person in trade or commerce. The use of 15 Day Street was mixed and so a combination of insurance coverage was necessary and requested by Riley. The evidence showed that the type of policy which existed on 15 Day Street prior to the one obtained through Commercial was a general homeowner’s policy. Pridham was seeking to replace this policy with more coverage for the business aspect of the property while maintaining adequate coverage on Riley’s residence. The alternative housing coverage would only be relevant to the personal residence for Riley, not in any business context. Thus, the court’s view of the 93A claim under section 9 was correct.
Viewed within the proper context of section 9, and given the factual findings by the trial judge which are not clearly erroneous, there was ample evidence to establish Commercial’s liability for violating G.L.c. 176D, Section 3, Subsection (9), “Unfair Claim Settlement Practices.” The trial judge found that, “in representing that 15 Day Street was covered for both business loss and temporary accommodations, Pridham and Commercial violated Subsection (9) (a), which prohibits ‘misrepresenting pertinent facts or... policy provisions relating to coverages at issue.’” [Appendix, Vol. 1, p. 0085]. The court ¿so found that Subsection (9)(n) was violated because Commercial had answered Riley’s 93A demand letter with a general denial without explanation. Subsection (9)(n) makes the failure “to provide promptly a reasonable explanation ... for denial of a claim ...” an “unfair or deceptive act” within the context of c. 176D and, therefore, c. 93A.
The appellant next contends that it was error for the trial judge to allow Riley to amend her third-party complaint during the trial to include counts for negligent misrepresentation. The complaint originally alleged only intentional misrepresentation against Commercial and Commercial now claims that the allowance of the motion to amend at that late stage “dramatically changed the basis of Riley’s cause of action....” (Brief of Appellant, p. 21). We disagree.
The allowance of the motion to amend was within the sound discretion of the court and will not be disturbed unless it was an abuse of discretion. Here, the amendment came during the trial and had the effect of conforming the pleadings to the proof that had emerged once the trial began. Mass. R. Civ. R, Rule 15(b). We note that the factual basis for this cause of action did not change. Rather, the amendment categorized the acts and omissions of Pridham and Commercial in a different light: negligence instead of intentional misrepresentation. Furthermore, Commercial asserts that it was prejudiced although the nature of that prejudice is *248 not specified at all. Even if Commercial was somehow prejudiced in the defense of this case, we consider it to be minimal in that misrepresentation was alleged from the beginning. Under the rules of civil procedure, Rule 15(b), the court implicitly found that “the presentation of the merits of the action will be subserved” by the amendment to conform to the evidence and we do not find grounds to disturb that determination.
Commercial further argues that the trial judge should not have amended the judgment to add damages to Riley’s recovery which reflect the settlement agreement between Pope and Riley. The contention is that the Pope/Riley settlement agreement was not entered into evidence at the trial, and thus cannot be considered as a basis for the judgment. The fact that the trial judge had knowledge of the settlement, Commercial argues, is not a substitute for the evidence of damages. We find no error.
In this case, the judge was permitted to take judicial notice of the agreement for judgment that was entered between two of the three parties to the original lawsuit. Prior to the trial on the third-party complaint, Pope and Riley settled, which settlement was approved by the trial judge and entered as a judgment under the same docket number. Therefore, the court was entitled to take judicial notice of the pleadings and judgment within the same action. In re Andrews, 368 Mass. 468, 476 (1975); See also HANDBOOK OF MASSACHUSETTS EVIDENCE, 6th ed. Section 2.8.1, p 43.
As pertains to the issues on appeal by the third-party plaintiff on cross-appeal, we turn next to Riley’s contention that she should have been awarded multiple damages pursuant to c. 93A In the first instance, the request for multiple damages was first raised in Riley’s First Amended Motion to amend the Judgment which was untimely filed with the court. The court was not required to take action on the motion since it was objected to by Commercial and because it was not filed and served within the 10 day period after entry of judgment. See Reporter’s notes to Mass. R. Civ. R, Rule 59. Secondly, the trial judge expressly rejected Riley’s claims that Commercial’s actions were knowing and willful, thereby avoiding the punitive damages provisions of c. 93A. There has been no showing that the trial court’s findings in this regard were clearly erroneous. Thus, there is no error.
Finally, Riley claims error in the judge’s denial of its request to have Commercial pay to Pope the amount of Pope’s attorney’s fees. In the Second Amended Judgment entered by the court, the trial judge made an award of $4,217.85 in attorney’s fees to be paid by Riley to Pope. The same judgment added $10,000 to Riley’s original recovery of damages from Commercial to take into account the agreement for settlement for that amount between Riley and Pope. Pursuant to that same agreement, additional attorney’s fees for Pope were anticipated but were to be assessed and reviewed by the court only if Riley succeeded in recovering a judgment exceeding $30,000 against Commercial. We have already determined that the court was entitled to take judicial notice of the agreement for judgment in the same case. In re Andrews, 368 Mass. 468, 476 (1975). Similarly, the additional award of attorney’s fees to Pope was contemplated and agreed to by Riley and the judge was permitted to resolve the remaining matters in the case as he saw fit.
For all of the reasons stated above, we determine that there was no reversible error. Accordingly, both cross appeals are dismissed.
So ordered.