Lauriat, J.
In 1997, the City of Beverly and the Beverly Golf and Tennis Commission (collectively “the City”) advertised for bids on the operation of the City’s municipal golf and tennis club (“the Club”). The City awarded the contract to Friel Golf Management Co., Inc. (“Friel”), but the award was challenged by Johnson Turf and Golf Management, Inc. (“Johnson”), which sought injunctive relief and damages from the City for alleged violations of G.L.c. 30B. Friel sought to intervene in the action in order to protect its interests. In January 1998, the Court (Botsford, J.) issued a preliminary injunction preventing the City from executing any long term agreement to operate the Club. The City then entered into a short term agreement with Friel to operate the Club.
In May 1998, all three parties agreed to a consent order whereby Friel would be allowed to intervene in the case; Friel would continue to operate the golf course; and the City would re-bid the contract. The City re-bid the contract for a five-year term, running from 1999-2003. Friel was declared the winning bidder, but the City refused to sign a contract with Friel or any other bidder.
In September 1998, Johnson filed an Amended Complaint in which it abandoned its request for injunctive relief and sought only damages against the City. The parties also agreed that since Johnson was no longer pursuing a remedy that implicated Friel’s interests, Friel would be dismissed from the action.
The court then bifurcated the pending civil action between Johnson and the City into separate trials on liability and damages. The liability issue was tried to a special master who found in favor of Johnson. In addition, the master found that Johnson’s 1998 bid was “qualitatively superior” to all others, and that Johnson had offered the most money for the contract.
In August 2001, prior to the damages trial, Johnson and the City agreed to a settlement whereby Johnson was awarded the operations contract. On August 22, 2001, the court (Gershengorn,. J.) ordered entry of a judgment based on the settlement. The City informed Friel of the judgment and told Friel that it would have to vacate the premises. Friel thereupon brought its present motion before the court seeking to re-inter - vene and set aside the judgment that was entered in this action.
*291 DISCUSSION
Only “a party or his legal representative” has a basis for obtaining relief from a judgment. Mass.R.Civ.P 60. Therefore, Friel must first establish its ability to intervene in this matter before the Court can consider the merits of Friel’s motion to set aside the judgment.
Friel bases its right to intervene on Mass.R.Civ.P. 24. In order to support an intervention of right under Mass.R.Civ.P. 24(a), the movant must fulfill four criteria: “(1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the litigation . . . ; (3) the applicant must show that unless able to intervene, the disposition of the action may .. . impair or impede his ability to protect the interest he has; and (4) the applicant must demonstrate that his interest ... is not adequately represented by existing parties.” Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56, 61 (2000). In addition, “the postjudgment intervenor must . . . not only justify its failure to intervene at an earlier stage of the action, but must also establish that it has not just an interest, but a compelling one, in the litigation.” Id. citing Cruz Management Co. v. Thomas, 417 Mass. 782, 786 (1994).
The greatest difficulty in many of these cases lies in determining whether the applicant has a sufficient interest in the property or transaction to warrant intervention. Prior decisions have not provided a reliable framework within which to measure the significance of the applicant’s interests. “The doctrinal ‘rules’ are so general as to provide very little help, [citations omitted] and the diversity of facts and interests that may be affected by litigation today is so broad as to make any simple formula difficult, if not impossible, to contrive.” Bolden 50 Mass.App.Ct at 62, citing Cotter v. Massachusetts Association of Minority Law Enforcement Officers, 219 F.3d 31 (1st Cir. 2000).
Turning to a determination of the extent of Friel’s interest in the present case, the parties present sharply divergent positions. Friel contends that, as the winning bidder of both the 1997 bidding process and the 1998 contract re-bid, it is entitled to the five-year contract advertised at that time. Johnson and the City contend that the City does not have a five-year contract with Friel because the City never executed a signed agreement as required by statute. The City further asserts that the special master determined that the initial contract award violated the applicable statute. Therefore, any contract awarded as a result of that bidding process is void. Johnson and the City assert that Friel has operated the Club on an at-will basis since the expiration of the Court’s Order of January 1998 that had allowed the City to authorize Friel’s short term operation of the Club.
The statute in question, G.L.c. 30B, § 17(a), provides that all municipal contracts of, or in excess of $5,000 shall be in writing. In addition, § 17(b) states, that with certain exceptions (inapplicable to this case), contracts made in violation of G.L.c. 30B are void. There is no dispute that Friel was at all times fully aware of the City’s refusal to execute the five-year contract, nor is there any doubt that Friel was aware that the City took the position that Friel was the Club’s “at-will” operator. The undisputed evidence before the Court is that Friel tried repeatedly to persuade the City to sign the contract and the City always refused. The Court concludes that Friel was well aware that it might not have an enforceable contract with the City.
This is not to suggest that the Court must decide whether Friel was operating under a contract or on an “at-will” basis. Friel has a remedy available if it can prevail against the City on a breach of contract claim. However, the Court must determine the significance of Friel’s interests for the purposes of Friel’s motion to intervene, and the uncertainty surrounding the strength of that interest makes it more problematic than compelling.
Recognizing that a postjudgment intervenor must justify its failure to intervene at an earlier point in the litigation, the City’s well-known position concerning Friel’s “at-will” status implicates the timeliness of Friel’s motion to intervene as well as the significance of its interest. By repeatedly stating that it considered Friel an “at-will” operator, the City signaled its belief that Friel did not have a protectible interest. Friel knew or should have known that the City had staked out a strongly adverse position cognizable at law and was not making a wholly frivolous claim. Furthermore, it is unreasonable to conclude that Friel thought it could look to Johnson to protect Friel’s interest at any point in the litigation. The court cannot credit Friel’s contention that it was justified in leaving the case when it did and saw no reason to protect its own interests until after the Entry of Judgment. Thus, in addition to the questionable nature of its interest, Friel has not carried its burden to satisfy the Court that it was justified in not reintervening at an earlier stage of the litigation.
II.
Friel counters that the City is required to award the five-year contract to Friel and that its failure to do so violates G.L.c. 30B. In a related argument, Friel asserts that the City exceeded its powers by ignoring the requirements of G.L.c. 30B when it formulated the terms of its settlement with Johnson. These arguments are not supported by the statute. The relevant portion of the G.L.c. 30B, §9 reads:
The procurement officer may cancel an invitation for bids, a request for proposals, or other solicitation, or may reject in whole or in part any and all bids or proposals when the procurement officer determines that the cancellation or rejection serves the best interests of the governmental body. The procurement officer shall state in writing the reason for the cancellation or rejection.
*292 This section has been construed to apply to contracts as well as bids. “[A] municipal contract must be awarded to the lowest responsible and responsive bidder if (emphasis in original) it is awarded to anyone, but if the procurement officer concludes in good faith that municipal interests are best served by not awarding it to anyone . . . the officer may do so and must state his reasons in writing.” Vining Disposal Service, Inc. v. Board of Selectmen of Westford, 416 Mass. 35, 38 (1993). On the basis of the statute and case law, Friel can only succeed in its contentions if it can demonstrate that the City is awarding Johnson the same operations contract as that to which Friel claims it is entitled. The facts do not support this reading of the new contract. There is ho dispute that the contract between Johnson and the City contains substantially different terms than the earlier bids. In addition, the findings of the special master, as adopted by the court, state that the earlier contract itself violated G.L.c. 30B. A municipal contract that violates statutory bidding requirements is void. Datatrol, Inc. v. State Purchasing Agent, 387 Mass. 679, 695 (1980). Both the difference in terms and the finding that the earlier contract is void compel the conclusion that the City negotiated an entirely new contract with Johnson.
Friel fares no better with its assertion that the City’s representatives were not empowered to award a contract to Johnson without subjecting it to the process required by G.L.c. 30B. The special master’s finding support the conclusion that the City was actually enforcing the dictates of G.L.c. 30B by contracting with the bidder who was entitled to the original award in conformity with the statute. See Bowmen v. Drewy, Civil Action No. 94-2756 (Mass.Super. January 11, 1996) (Sosman, J.) (5 Mass. L. Rptr. 104). Therefore, the court cannot conclude that the contract that was the subject of the settlement is statutorily defective.
III.
Friel does not specify which portion of Mass.R.Civ.R 24 it seeks to invoke to justify intervention. Therefore, the court will also consider Friel's motion under Mass.R.Civ.P. 24(b). “ Rermissive intervention is wholly discretionary with the trial court.’ and the decision of the trial court will be reversed only for clear abuse of discretion.” Massachusetts Federation of Teachers, AFT AFL-CIO v. School Committee of Chelsea, 409 Mass. 203, 209 (1991)." In exercising its discretion, the court must consider “whether allowing intervention might delay or prejudice the adjudication of the rights of the parties.” Id. Johnson and the City have pursued an orderly adjudication of this dispute since 1998. Now that the issues between them have been resolved, the Court concludes that Friel’s post-judgment bid. to intervene would cause significant prejudice and delay to the parties to this litigation. This is a particularly appropriate conclusion in a case such as this one where the potential intervenor may pursue its remedy for perceived wrongs in a separate action.
As the Court will not allow Friel’s motion to re-intervene, it need not and therefore does not reach or address Friel’s motion to set aside the judgment entered in this action.
ORDER
For the forgoing reasons, Friel Golf Management Co., Inc.’s Motion to Re-intervene and to Set Aside Judgment is DENIED.