Ford, Daniel A., J.
This case involves an accident which took place on November 29, 2003, at the Jiminy Peak Ski Area in Hancock. The plaintiff, Kevin Yang (hereafter “Kevin”), who was then six years old, was skiing at Jiminy Peak and was injured when Reed T. Wendorf-French (hereafter “French”), who was then snowboarding, collided with him. French was insured under a homeowners policy issued to his mother by Harleysville Worcester Insurance Company (hereafter “Harleysville”). The underlying tort claim against French has been settled. What remains is a claim brought under G.L.c. 93A against Harleysville, in which it is alleged that Harleysville failed to make a reasonable settlement offer at a time when liability had become clear. That claim was tried before me, jury waived, on December 11, 2009. Based upon the exhibits, the testimony of the witnesses, and the reasonable inferences drawn therefrom, I find the facts to be as follows.

FINDINGS OF FACT

1.Shortly after the accident occurred, Kevin’s father, Thomas T. Yang (hereafter “Thomas”), retained the services of Attorney David R. Cianflone (hereafter “Cianflone”). Thomas told Cianflone that he had been next to Kevin when the accident took place and actually saw what occurred. He said that Kevin had fallen and had been lying on the ground for approximately two to three minutes. He said that French was snowboarding negligently and at an excessive rate of speed, and that as he approached Kevin on his way down the slope he tried to jump over him rather than taking evasive steps to maneuver around him. Thomas claimed that French’s attempt was unsuccessful and that French’s snowboard landed on Kevin’s face causing lacerations to his cheek and his eyelid.
2. In January of 2004, Cianflone put Harleysville on notice of this claim. Richard Kardas (hereafter “Kardas”) was assigned to adjust the claim and undertook an investigation. He obtained a copy of the incident report from Jiminy Peak, which was signed by Thomas. In a section of that report entitled “Injured’s Description of Accident,” the following information appears: “Kevin fell down in front of [French]. [French] was unable to stop and collided.” There is no indication in that report that French was snowboarding negligently or at an excessive rate of speed. The report also identifies French as the only witness to the accident.
3. On January 24, 2004, Kardas took a recorded statement from French, who was 15 years old at the time of the accident. French told Kardas that he was snowboarding down the slope, which was not entirely covered with snow, when he came upon Kevin. He said that he was not going extremely fast, but that he was going faster than Kevin and therefore was about to pass him. He claimed that he yelled, “On your left,” to warn Kevin that he was approaching. He said that Kevin then turned to look at him and in doing so fell in front of him. He said that he was unable to avoid Kevin and for that reason tried to jump over him. However, he collided with Kevin and Kevin was injured, although he was not sure if the cuts to Kevin’s face resulted from the snowboard or from Kevin’s own skis. He claimed that he sent his friend down the mountain to alert the ski patrol, and that he stayed with Kevin until the ski patrol arrived. He also stated that Thomas was not with Kevin at the time of the accident, and that he arrived upon the scene sometime thereafter.
4. Kardas also determined that the action occurred on the beginner’s slope, and that November 29 was the first day of the ski season.
5. Kardas confirmed that coverage was available for this claim and made contact with Cianflone. He asked for further details about the claim and about Kevin’s injuries, and Cianflone agreed that he would provide it.
6. Thereafter, Kardas spoke to Attorney Donald Feener, one of Harleysville’s staff attorneys. On March 11, 2004, Attorney Feener advised Kardas that there was “no case law regarding the instant loss,” and that the Massachusetts ski statute, G.L.c. 143, §710, was “not helpful to the defense of the claim.” It appears that Kardas had a copy of the ski statute.
7. Over the next several months, Kardas was in touch with Cianflone regarding Kevin’s recovery from his injuries. However, because Kevin was still treating and there was a possibility of additional treatment, *533 including plastic surgery, he had not reached an end result.
8. In March of 2005, the file was transferred from Kardas to Stephen Strouse (hereafter “Strouse”). Strouse reviewed the file and listened to a tape recording of French’s statement. After he evaluated the case, he contacted Cianflone and asked for updated medical reports and photographs showing the scars to Kevin’s face.
9. On January 9, 2006, Cianflone wrote to Kardas (evidently believing that Kardas was still the adjuster assigned to the file) and made a demand for the full policy limits in the amount of $75,000. In that letter, he asserted that French had been snowboarding at an excessive speed and was therefore negligent. Shortly thereafter, Cianflone learned that Kardas was no longer working on the file and that Strouse had taken his place.
10. At around this time, Cianflone’s associate, Dana Doyle (hereafter “Doyle”), became involved in assisting Cianflone with this matter. In March of 2006 Doyle telephoned Strouse, who said that this file was number three on his list and that he would “price it out” as soon as possible and get back to her. I find nothing terribly significant about that comment because an adjuster’s duties include the consideration of a settlement offer in light of the strengths and weaknesses of the case. His “pricing it out” could just as easily have led to an offer to settle the case for nuisance value as to a substantial offer.
11. In April of 2006, Cianflone telephoned Strouse to discuss the case. He claims that Strouse said that he felt that this was a clear liability case. Strouse denies making any such statement. Cianflone also claims that in May of 2006, he spoke to Strouse again and this time Strouse said that he had reviewed the photographs of Kevin’s scars and that he would be making a “substantial” offer. Once again, Strouse denies making that comment. I find that the evidence on these issues is in equipoise, and I am unable to determine whose version of the two telephone conversations is more credible. Cianflone is an honest, ethical lawyer whose integrity is above reproach, and his credibility is bolstered by the fact that he claims to remember significant details about those two conversations. I have no doubt that during his testimony he related the substance of those two conversations to the best of his memory. On the other hand, Strouse impressed me as an honest and forthright gentlemen, and his credibility is bolstered by the fact that his copious notes (Exhibit 3) contain no reference to either of those two conversations. I think that he tried to be completely truthful during his testimony. Having considered the evidence carefully, I conclude that the plaintiff has not proven by a preponderance of the evidence that Strouse conceded that this was a clear liability case or that he promised to make a substantial offer.
12. On April 19, 2006, Strouse did request that the reserve on this case be raised from $2,500 to $50,000. However, that request was denied by his superiors at Harleysville. I accept Strouse’s testimony that a reserve is tantamount to setting money aside for actuarial purposes, and that a decision to raise a reserve does not necessarily mean that liability is clear. Rather, it reflects a worst case scenario, taking into account the uncertainties of litigation.
13. In May or June of2006, Strouse was transferred to the Workers’ Compensation Division of Harleysville. Accordingly, the responsibility for adjusting this claim was assigned to Heather O’Toole (hereafter “O’Toole”).
14. O’Toole secured a transcript of French’s recorded statement and reviewed it. She also looked into the possibility of asserting defenses of assumption of risk and negligent parental supervision. On July 18, 2006, O’Toole wrote to Cianflone and denied liability. She did so based upon the fact that French claimed to have warned Kevin as he was approaching him by yelling “on your left,” and that Kevin then turned and fell into French’s path. She noted in her letter: “Despite evasive action taken by Mr. French he was not able to completely avoid your client.” She also considered the fact that French’s statement contradicted the claims made in Cianflone’s earlier letter to Haiyleysville that Kevin had been on the ground for two or three minutes before the accident and that Thomas has been by his side when the accident occurred.
15. On September 6, 2006, Cianflone wrote to O’Toole and made a demand for settlement under G.L.c. 93A, §9, and G.L.c. 176B, §3. He based the demand upon his allegation that Strouse had conceded that liability was clear and promised that he would be making a settlement offer. Harleysville responded by denying the claim.
16. On November 1, 2006, Cianflone commenced this action against both French and Harleysville by filing a complaint in the Berkshire Superior Court. In that complaint, he asserted only a claim of negligence against French. Harleysville responded by retaining Attorney Joseph J. Padellaro (hereafter “Padellaro”) to represent French.
17. On June 27, 2007, Padellaro notified Harleysville that, in his opinion, French was 100% at fault. He based his opinion primarily on G.L.c. 143, §710. As a result of that communication, the adjuster who was then assigned to the case suggested that the reserve should be addressed as soon as possible. Shortly thereafter, the reserve was raised to $94,000.
18. These events led Harleysville to agree to mediate the case, and a mediation did in fact take place on August 17, 2007. The case did not settle at that time, but an offer was made and the adjuster’s notes indicate that the parties were “very close” to resolving the matter for $70,000.
*534 19. On September 17, 2007, Padellaro forwarded to Cianflone an Offer of Judgment pursuant to Mass.R.Civ.P. 68, for $65,000. On November 27, 2007, Cianflone accepted the Offer of Judgment on the underlying tort claim.

RULINGS OF LAW AND DISCUSSION

1. Insurers have a statutory duty to “effectuate prompt, fair and equitable settlement of a claim in which liability has become reasonably clear.” G.L.c. 176D, §3(9)(f); Clegg v. Butler, 424 Mass. 413, 421 (1997). Insurers also have a duty of good faith and fair dealing in insurance settlement negotiations Id. at 419. Violation of these duties may give rise to liability under G.L.c. 93A. R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 74 (2001); Van Dyke v. St. Paul Fire & Marine Insurance Co., 388 Mass. 671-75 (1983).
2. In order to determine whether a defendant’s liability is “reasonably clear,” one must employ an “objective test which calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.” Demeo v. State Farm Mutual Auto Insurance Company, 38 Mass.App.Ct. 955, 956-57 (1995). “(W]hat matters ... is whether [Harleysville] reasonably believed that [its insured’s] liability was not clear, or was unreasonable in holding that belief.” Bolden v. O’Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56, 67 (2000). “So long as the insurer acts in good faith, the insurer is not held to standards of omniscience or perfection; it has the leeway to use, and should consistently employ, its honest business judgment.” Id., quoting Peckham v. Continental Casualty Insurance Co., 895 F.2d 830, 835 (1st Cir. 1990). “Good faith requires that any settlement decision be made without regard to the policy limits and that the insurer exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based.” Hartford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 119 (1994). An insurer’s good faith but mistaken evaluation of a claim does not constitute a violation of G.L.c. 176D. See O’Leary-Alison v. Metropolitan Property and Casualty Insurance Co., 52 Mass.App.Ct. 214, 218 (2001).
3. I rule that the plaintiff has failed to prove that liability was reasonably clear in June or September of 2006. Harleysville had two very different versions of the accident from its insured and the claimant, and indeed was in possession of a statement from its insured which suggested that he had not acted negligently. Moreover, while it is true that Harleysville was in possession of the ski statute as early as March of 2004, the mere fact that a snowboarder collides with a skier below him does not conclusively establish that the snowboarder was negligent. Even during the trial of this matter, counsel for Kevin concededthatG.L.c. 143, §710 is not a strict liability statute. Thus, it follows that there may be situations where a skier collides with another skier below him on the slope and where no liability results. Harleysville reasonably believed in 2006 that this may be one of those cases.[1] Therefore, I conclude that Harleysville was justified in denying liability at that time.[2]
4.As previously set forth, I am not persuaded that Harleysville’s adjuster told Cianflone in 2006 that he felt that liability was clear or that he intended to make a substantial offer. However, even if he did say those things, it is clear that his view was not shared by his superiors at Harleysville. Strouse’s request to increase the reserve at that time was denied.
Christine Jaworski, a senior general liability supervisor at Harleysville who oversaw the work of both Strouse and his successor O’Toole, agreed with O’Toole’s assessment that liability was not clear. There were perfectly understandable reasons supporting her belief, including the statement of French and the absence of any indication of negligence in the Jiminy Peak incident report. There is simply no persuasive evidence of any bad faith on Harleysville’s part. See Parker v. D’Avolio, 40 Mass.App.Ct. 394, 402 (1996). Strouse may have been wrong in his assessment of the claim, and O’Toole may have ultimately been proven wrong in hers, but a mere mistake in the evaluation of a claim, i.e., bad judgment, does not constitute bad faith or a violation of G.L.c. 176D. Id.[3]

ORDER

For the foregoing reasons, JUDGMENT shall be entered for the defendant, Harleysville Worcester Insurance Company.

When Harleysville was disabused of that notion by Padellaro in June of 2007, it soon thereafter entered into serious settlement negotiations with Cianflone and managed to resolve the claim against French to Thomas’ satisfaction within a reasonable time.

Because I conclude that liability was not reasonably clear even if the ski statute applies to this claim, I need not address Harleysville’s additional arguments that the ski statute does not apply to snowboarders and that the willful, wanton and reckless standard, as opposed to the simple negligence standard, applies to personal injury cases arising out of an athletic event such as skiing.

The plaintiff also contends that Harleysville failed to conduct a reasonable investigation before denying the claim. In light of all the evidence, including the fact that there were no disinterested witnesses to the accident, I am not persuaded by that contention.